UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MARTINEZ, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KNIGHT TRANSPORTATION, INC. d/b/a ARIZONA KNIGHT TRANSPORTATION, INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 1:16-cv-01730-DAD-SKO<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION<br><br>(Doc. No. 25) |

This matter is before the court on plaintiff's motion for class certification. (Doc. No. 25.) On May 30, 2018, that motion came before the court for hearing. Attorney Craig Ackermann appeared telephonically on behalf of plaintiff Robert Martinez and the putative class members. Attorneys Richard Rahm and Kai-Ching Cha appeared on behalf of defendants. Having considered the parties' briefing, and having heard from counsel, the court will grant plaintiff's motion for class certification.

**BACKGROUND**

Plaintiff and the putative class members were employed as truck drivers by defendant. (Doc. No. 2-1 at 13.) Their job responsibilities included making deliveries of dry goods, produce,

1

materials, and other products to various businesses located throughout California. (*Id.* at 13.)

Plaintiff and the putative class members allege that they typically worked between 10 and 14 hours per day, 5 to 6 days per week, and 52 weeks per year. (*Id.*) According to the allegations of the complaint, defendant failed to provide class members with appropriate meal and rest breaks as required under California law. (*Id.* at 13–14.) Moreover, although the class members were compensated based on a piece-rate formula, defendants did not pay them a separate hourly wage to compensate them for rest breaks and for performing non-driving tasks. (*Id.* at 13.) Based upon these allegations, plaintiff asserts multiple violations of California wage and hour provisions.

Plaintiff seeks to represent the following class:

> All current and former truck drivers employed by Defendant Knight Transportation, Inc., who advised Defendant that they resided in Oregon, Nevada, Arizona, Utah, and/or Colorado, who were paid in whole or in part on a piece-rate basis, and who drove one or more routes of five hours or more entirely within the State of California for Defendant during the "Class Period" from September 30, 2012 through the date of class certification.

(Doc. No. 25 at 2.)[1] Plaintiff seeks certification only as to the first, second, third, and sixth causes of action in the complaint.

## LEGAL STANDARD

The class action is a procedural mechanism whereby the "usual rule that litigation be conducted by and on behalf of the named parties only" is swept aside so that multiple parties—unwieldy in number but possessing similar or identical claims—may pursue common redress in an efficient and economical manner. *Comcast v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)); *see also Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 963–64 (9th Cir. 2013). Federal Rule of Civil Procedure 23 controls class certification and imposes a two-step process in deciding whether a class may be certified.

/////

---

[1] At the hearing on the pending motion the scope of the class definition was clarified. As the court presently understands plaintiff's claim, plaintiff and the putative class members seek to apply California law only as to routes that were (a) driven entirely within the state of California, and (b) at least five hours in length. That is, plaintiff is *not* seeking apply California law extraterritorially. (*See* Doc. No. 29 at 5) (stating that "this case does not concern out-of-state routes or shifts"). The analysis that follows proceeds with this understanding.

2

Rule 23(a) requires the moving party to demonstrate the existence of four prerequisites in order for the court to consider whether certification is proper. These prerequisites are often described as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. If—and only if—a putative class satisfies these four requirements may it then proceed to show it also satisfies one of the three subsections of Rule 23(b). The party seeking class certification bears the burden of establishing conformity with these requirements, and must do so by producing facts "affirmatively demonstrat[ing]" that certification is warranted. *Comcast*, 569 U.S. at 33; *Dukes*, 564 U.S. at 350. A court must review the merits of a party's substantive claim to the extent that they overlap with issues touching on class certification. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing *Dukes*, 564 U.S. at 350–51 and *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)); *see also Blair v. The CBE Grp.*, 309 F.R.D. 621, 625 (S.D. Cal. 2015). Only after it has conducted a "rigorous analysis" of these facts and determined they show "actual, [and] not presumed, conformance" with Rule 23(a) and (b), may a district court certify a class. *Ellis*, 657 F.3d at 981 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 161, (1982)); *see also Comcast*, 569 U.S. at 33–34 (extending the "rigorous analysis" requirement to Rule 23(b)); *Patel v. Nike Retail Servs., Inc.*, Case No. 14-cv-4781-RS, 2016 WL 1241777, at *3 (N.D. Cal. Mar. 29, 2016) ("This 'rigorous' analysis applies both to Rule 23(a) and Rule 23(b)."). If a court does decide to certify a class, it must define the class claims and issues and appoint class counsel. Fed. R. Civ. P. 23(c)(1), (g). Finally, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5).

**A.     Rule 23(a) Requirements**

In order for a class member to sue as a representative of all class members, the class member must establish the following prerequisites: (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

1. <u>Numerosity</u>

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no strict number requirement for numerosity, courts have routinely held that classes comprised of more than forty members will satisfy this prerequisite. *See Ikonen v. Hartz Mt. Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough."); *see also Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1327 (W.D. Wash. 2015) ("Generally, 40 or more members will satisfy the numerosity requirement.") (quoting *Garrison v. Asotin County*, 251 F.R.D. 566, 569 (E.D. Wash. 2008)); *McMillon v. Hawaii*, 261 F.R.D. 536, 542 (D. Haw. 2009).

2. <u>Commonality</u>

Rule 23 requires there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a common contention . . . of such a nature that it is capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. As the Supreme Court further explained, this frequently necessitates an inquiry that "overlap[s] with the merits of plaintiff's underlying claim." *Id.* at 351.

3. <u>Typicality</u>

"[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). They need not be clones; rather, all that is required is that the claims or defenses be "reasonably co-extensive." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (noting that this standard is a "permissive" one and requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members; they need not be substantially identical"). Typicality is satisfied if the representative's claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See, e.g., Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class

and are not subject to unique defenses). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508.

### 4. Adequacy of Representation

Plaintiffs seeking class certification must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020)); s*ee also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). "An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class." *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 959 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1020). Accordingly, "[c]lass certification will be inappropriate if fundamental conflicts of interest are determined to exist among the proposed class members." *Allied Orthopedic v. Tyco Healthcare Grp.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007). Generally, the adequacy inquiry seeks to ensure that the class representative is "part of the class and [that he] possess[es] the same interest and injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

## B. Rule 23(b) Requirements

Once the prerequisites of Rule 23(a) are met, the court must certify the class under one of the Rule 23(b) categories. Certification under Rule 23(b)(3) is permitted when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is [deemed to be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Dukes*, 564 U.S. at 362 (quoting Fed. R. Civ. P. 23(b)(3)); *see also Tyson Foods, Inc. v. Bouaphakeo*, ___U.S. ___, ____, 136 S. Ct. 1036, 1045 (2016) ("An individual question is one where 'members of a proposed class will need to present

evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'") (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012)). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 622, whereas the superiority requirement demands courts "assess the relative advantages of alternative procedures for handling the total controversy" in order to determine that "a class action is the 'superior' method of resolution." Fed. R. Civ. P. 23(b)(3) advisory comm. note; *see also Pointer v. Bank of Am. Nat'l Ass'n*, No. 2:14-cv-0525-KJM-CKD, 2016 WL 696582, at *8 (E.D. Cal. Feb. 22, 2016). While the predominance requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. Ultimately, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc.*, 136 S. Ct. at 1045 (quoting Newberg, § 4:49, at 195–96).

Rule 23 provides that, aside from predominance, a court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule lists four metrics pertinent to superiority, including class members' interests in individually controlling litigation, whether any litigation has already been filed by putative class members, the desirability of concentrating the litigation in a class action, and the "likely difficulties in managing a class action." *Id.* The Ninth Circuit has recognized a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns," but rather should look to "manageability as one component of the superiority inquiry." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)).

**DISCUSSION**

The parties here do not contest most aspects of class certification. Defendant limits its opposition solely to the issue of predominance under Rule 23(b)(3). Nonetheless, the court has an

6

independent duty to ensure that class certification is appropriate in a given case. *See In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 660 (S.D. Cal. 2010). Therefore, the court will briefly examine each of the uncontested areas of certification.

**A.    Numerosity**

According to the pending motion for class certification, as of November 2016, the class was composed of 4,135 current and former non-California resident drivers and continues to grow in number. (Doc. No. 25 at 16.) This is sufficient to satisfy Rule 23's numerosity requirement. *See, e.g.*, *Orvis v. Spokane County*, 281 F.R.D. 469, 473 (E.D. Wash. 2012) (finding numerosity satisfied with roughly 260 class members); *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").

**B.    Commonality**

"To show commonality, Plaintiffs must demonstrate that there are questions of fact and law that are common to the class." *Ellis*, 657 F.3d at 981. Commonality under Rule 23(a)(2) has "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. Defendant does not contest that commonality is satisfied here. The class in this case is composed solely of non-California resident drivers who drove at least five hours entirely within the state of California. (Doc. No. 25 at 12.) Although the length of time the drivers each spent within California varied, each was employed in the state for more than five consecutive hours. Moreover, and as discussed in more detail below, the claims of all class members will stand or fall depending on whether this length of time spent in California suffices to trigger the application of California wage and hour laws. *See Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)). The court concludes that commonality is satisfied here.

/////

## C. Typicality

Defendant also does not contest typicality. Plaintiffs submit the declaration of named plaintiff Robert Martinez to demonstrate typicality. (Doc. No. 25-16 ("Martinez Decl.").) In that declaration, Martinez avers that "Defendant's uniform compensation policies [were] applicable to me and my fellow Non-California resident putative Class members," and that "[t]hese policies applied uniformly among all of Knight's California non-resident truck drivers." (*Id.* at ¶ 3.) Based on this declaration, the court finds that plaintiff Martinez's claims are "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Typicality is therefore satisfied here.

## D. Adequacy of Representation

Defendant does not contest that the class representative and his attorneys are adequate. Plaintiff and class counsel have submitted multiple declarations stating that there are no conflicts of interest because the named plaintiff, plaintiff's attorneys, or the proposed class members. (Doc. No. 25-1 at ¶ 3; 25-14 at ¶ 4; 25-16 at ¶ 7.) The declarations of plaintiffs' counsel establish that each has a great deal of experience in similar litigation. (Doc. No. 25-1 at ¶¶ 17–29; 25-14 at ¶¶ 1–8.) These declarations also establish that the named class representative is adequate to represent the wider class. (Doc. No. 30 at ¶ 30; 25-14 at ¶ 9; 25-16 at ¶ 7.) Adequacy of representation is satisfied here.

## E. Predominance

Certification under Rule 23(b)(3) is permitted when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is [deemed to be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Dukes*, 564 U.S. at 362 (quoting Fed. R. Civ. P. 23(b)(3)); *see also Tyson Foods*, 136 S. Ct. at 1045 ("An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'") (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012)). "The Rule 23(b)(3)

predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 622, whereas the superiority requirement demands courts "assess the relative advantages of alternative procedures for handling the total controversy" in order to determine that "a class action is the 'superior' method of resolution." Fed. R. Civ. P. 23(b)(3) advisory comm. note; *see also Pointer*, 2016 WL 696582, at *8. While the predominance requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. Ultimately, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods*, 136 S. Ct. at 1045 (quoting Newberg, § 4:49, at 195–96). Defendant raises multiple issues regarding predominance, each of which are addressed in turn.

1. <u>Whether California Law Applies on a Class-Wide Basis</u>

First, defendant contends that common questions of law do not predominate here because the question of whether California law applies to these claims is necessarily an individualized inquiry. As the California Supreme Court has noted, whether California's wage and hour laws presumptively apply to particular classes of workers depends on whether the California Legislature would have intended those laws to apply to the class of workers. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1197–98 (2011); *Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 577–78 (1996). Thus, "[i]f an employee resides in California, receives pay in California, and works exclusively, or principally, in California, then that employee is a 'wage earner of California' and presumptively enjoys the protection of IWC regulations." *Tidewater*, 14 Cal. 4th at 578. To determine whether California law applies under circumstances akin to this one, most courts employ a multi-factor test drawn from language appearing in the *Sullivan* and *Tidewater* decisions. These factors include (1) the particular provision of law at issue, (2) the residence of the employer, (3) the residences of the employees, (4) whether the work at issue was performed in California (i.e., the situs of employment), (5) whether the employee receives pay in California, and (6) whether the employee's absence from California was temporary or permanent. *See Oman*

9

*v. Delta Air Lines, Inc.*, 230 F. Supp. 3d 986, 992–93 (N.D. Cal. 2017); *Bernstein v. Virgin Am., Inc.*, 227 F. Supp. 3d 1049, 1060 (N.D. Cal. 2017) (*Bernstein II*). Notably, the California Supreme Court has declined to adopt a bright-line territoriality rule, in which California law would apply only to work actually performed within the state. *See Tidewater*, 14 Cal. 4th at 577–578; *see also Bernstein v. Virgin Am., Inc.*, No. 15-CV-02277-JST, 2016 WL 6576621, at *7 (N.D. Cal. Nov. 7, 2016) (*Bernstein I*). As the court noted:

> In some circumstances, state employment law explicitly governs employment outside the state's territorial boundaries… The Legislature may have similarly intended extraterritorial enforcement of IWC wage orders in limited circumstances, such as when California residents working for a California employer travel temporarily outside the state during the course of the normal workday but return to California at the end of the day. On the other hand, the Legislature may not have intended IWC wage orders to govern out-of-state businesses employing nonresidents, though the nonresident employees enter California temporarily during the course of the workday. Thus, we are not prepared, without more thorough briefing of the issues, to hold that IWC wage orders apply to all employment in California, and never to employment outside California.

*Tidewater,* 14 Cal. 4th at 577–578. Nonetheless, many district courts have concluded that even if the situs of employment is not the *only* factor to consider in making this determination, it is certainly the most important. *See, e.g.*, *Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4245988, at *12 (N.D. Cal. Aug. 27, 2014) (collecting cases and noting that "the critical factor is where the work at issue is performed"); *Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2012 WL 12942824, at *5 (N.D. Cal. May 3, 2012) (stating that focusing on the situs of employment is the "most reasonable" approach); *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 900 (C.D. Cal. 2009) ("[T]he determinative issue is whether an employee principally works in California.").

Defendant correctly points out that plaintiff is not a California resident, that none of the putative class members are California residents, and that the class members drive most of their routes outside of California (even though the particular routes at issue in this case were driven entirely within California). (*See* Doc. No. 28 at 8–10, 12.) These factors weigh against a finding that California law applies. *See Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011)

(finding that California had a sufficient connection to claims, in part, because defendant "has its headquarters and principal place of business in California"); *Gravestock v. Abilene Motor Express, Inc.*, No. SACV 14-170 JVS (RNBx), 2018 WL 1620885, at *7 (C.D. Cal. Mar. 8, 2018) (finding it significant for purposes of the significant contact test that defendant "is not a California employer"); *Ayala v. U.S. Xpress Enters., Inc.*, No. EDCV 16-137-GW(KKx), 2016 WL 7586910, at *4 (C.D. Cal. Dec. 22, 2016) (noting that California may not have sufficient contacts to the claims at issue because "approximately 89% of the putative Class Members do not reside in California, and are not employed full-time in California—rather, they have only temporarily driven in or through California while performing deliveries").

Whether the laws at issue here apply to the claims of the putative class members does not appear to have been definitively answered by any court. The parties have devoted a great deal of their briefing to this question. (Doc. No. 28 at 17–22; Doc. No. 29 at 6–11.) At this stage of the litigation, however, the court need not resolve it. Whether the California laws at issue here apply to trucking routes lasting five hours or more and driven entirely within the state of California—despite the fact that the drivers driving those routes are not California residents, work for a non-California employer, drive most of their routes outside of California, and are not paid in California—is a question of law that can be resolved on a class-wide basis in one fell swoop. *See Dukes*, 564 U.S. at 350 ("What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."). If it does, the class may well prevail. If it does not, the class claims will fail. Resolution of this question would be inappropriate at this stage of the litigation. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."); *Bernstein I*, 2016 WL 6576621, at *10 (granting class certification but declining to resolve the question whether California law applied to the entire class, stating that if the court later determines that California law does not apply to some class members, "the Court can feasibly identify those Subclass members who have a right to recover"); *Oman*, 230 F. Supp. 3d at 993 (determining on a motion for summary judgment that because the "named plaintiffs only worked a *de minimis* amount of time in California . . . and in light of the

11

nature of their work . . . Section 226 does not apply to the claims of the four named plaintiffs"). The uncertainty regarding the applicability of California labor law does not defeat a finding of predominance in this case.

2. Due Process Concerns Regarding Application of California Law

Defendant separately contends that under California choice-of-law principles, California law may not be applied on a class-wide basis. Further, defendants argue that because plaintiff has failed to proffer a manageable way for the court to conduct a conflict-of-law analysis as to the applicability of other states' laws, class certification should be denied. (Doc. No. 28 at 16–17.)

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). The purpose of this inquiry, rooted in the Due Process Clause of the Constitution, is to ensure that application of a state's substantive law on a class-wide basis "is neither arbitrary nor fundamentally unfair." *Shutts*, 472 U.S. at 818 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981)). The court begins with the strong presumption that California law applies, since "'[a] state court is rarely forbidden by the Constitution to apply its own state's law' . . . especially where, as here, the case is predicated upon violations of a state's law that allegedly occurred within that state." *AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1113 (9th Cir. 2013) (quoting *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (2011)).

Under California law, "the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001)); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822 (1985). If the proponent satisfies this requirement, "the burden shifts to the other side to demonstrate 'that foreign law, rather than California law, should apply to class claims.'" *Mazza*, 666 F.3d at 590 (quoting *Wash. Mut. Bank*, 24 Cal.4th at 921). In that event, the party seeking application of another state's law "must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an

12

appropriate one for the forum to apply to the case before it." *Wash. Mut. Bank*, 24 Cal. 4th at 919.

      a.    *Significant Contact or Aggregation of Contacts*

Here, the proposed class is comprised solely of truck drivers who drove trucking routes in California, and the class is explicitly defined to encompass only that conduct which occurred in this state. *See AT & T Mobility*, 707 F.3d at 1113 (holding that California antitrust law can be lawfully applied "when more than a *de minimis* amount of the defendant's alleged [misconduct] took place in California"). In addition, although defendant is not a citizen of California for purposes of personal jurisdiction, defendant nonetheless maintains substantial business operations in the state. *See Allstate*, 449 U.S. at 318 n.2 ("The Court has recognized that examination of a State's contacts may result in divergent conclusions for jurisdiction and choice-of-law purposes.") (citing *Kulko v. Cal. Superior Court*, 436 U.S. 84, 98 (1978) and *Shaffer v. Heitner*, 433 U.S. 186, 215 (1977)). Specifically, plaintiff notes in his motion that "[d]efendant has no less than 30 terminals, drop yards, and/or service centers, including California facilities in Tulare, Fontana, and Rancho Dominguez." (Doc. No. 25 at 8.) Defendant's employees also regularly conduct business in California: according to defendant's opposition to the pending motion, the class members drove routes in California once per week, on average. (Doc. No. 28 at 7.) Perhaps most significantly, and as plaintiff now makes clear in his reply, plaintiff "only seeks to certify a Class of non-resident drivers for days worked *entirely* within California." (Doc. No. 29 at 4.)

The undersigned concludes that the contacts of the class members in this case are sufficient to allay any due process concerns. As already noted, "[a] state court is rarely forbidden by the Constitution to apply its own state's law." *Sullivan*, 662 F.3d at 1271. Moreover, the Supreme Court's decision in *Allstate* "places only 'modest restrictions on the application of forum law,' and most commentators have viewed *Allstate* as setting a highly permissive standard." *AT & T Mobility*, 707 F.3d at 1111 (quoting *Shutts*, 472 U.S. at 818). By virtue of the business defendant regularly conducts in California, defendant "can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation in which the company is involved." *Allstate*, 449 U.S. at 317–18; *see also Shutts*, 472 U.S. at

13

837–38 (noting that "the underlying theory of a choice-of-law due process claim must be that the parties plan their conduct and contractual relations based upon their legitimate expectations concerning the subsequent legal consequences of their actions"). Not only do defendants conduct business in California on a regular basis, but the incidents giving rise to plaintiff's causes of action occurred entirely within California. *See AT & T Mobility*, 707 F.3d at 1113 ("[A] defendant cannot reasonably complain that the application of California law is arbitrary or unfair when its alleged conspiracy took place, at least in part, in California") (citing *Shutts*, 472 U.S. at 822); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 4505701, at *5 (N.D. Cal. Aug. 21, 2013) (noting that the holding of *AT & T Mobility* was not restricted to the particular statute at issue in that case, but was instead a "broader affirmation of the *Allstate* standard and the guidance it provides to district courts"). Given that defendant's employees routinely drive trucking routes in California, defendant cannot reasonably be surprised that California law might apply to that portion of its business that occurs wholly within that state. The court therefore finds that plaintiff has satisfied his burden under the Due Process Clause.

        b.     *Governmental Interest Test*

The next step is to determine whether, under California conflict-of-law rules, the court may apply California law across the entire class, or if the law of another state should apply instead. Unlike the first prong of the test, the burden of proving that foreign law should apply to class claims rests with the party opposing class certification. *Mazza*, 666 F.3d at 589–90 (noting that once the "aggregation of contacts" showing is made, "the burden shifts to the other side to demonstrate 'that foreign law, rather than California law, should apply to class claims'") (quoting *Wash. Mut. Bank*, 24 Cal. 4th at 921). In making this determination, courts look to a three-step governmental interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.

/////

> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Mazza*, 666 F.3d at 590 (citing *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82 (2010)). As one district court has noted, a defendant seeking to satisfy this burden must engage "in an analytically rigorous discussion of each prong of the test based on the facts and circumstances of this case, and these Plaintiffs' allegations." *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *2 (C.D. Cal. Apr. 9, 2014) (brackets omitted).

Defendant does not analyze the three prongs of the governmental interest test in any detail, appearing to mistakenly believe that plaintiff bears the burden of persuasion on this issue. (*See* Doc. No. 28 at 23) (arguing that plaintiff "has not provided a manageable way for the Court to perform a conflict-of-law analysis for each of the five states that the putative class members reside in"). California law says otherwise. *See Zinser*, 253 F.3d at 1187 ("Because Zinser seeks to invoke the law of a jurisdiction other than California, she bears the burden of proof."); *Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30, 41 (2005) ("In order to persuade a California court to apply the law of another forum, the proponent of the other forum's laws must invoke the law of the foreign jurisdiction, show that it materially differs from California law, and demonstrate how applying that law will further the interest of the foreign jurisdiction."). Nonetheless, construing defendant's opposition liberally, the court will examine whether defendant has established that foreign law, rather than California law, should apply to this case.

        i.      Differences Among Potentially Affected Jurisdictions

Defendant's memorandum in opposition identifies two differences between California law and the laws of the other states where the putative class members resided, which include Oregon, Nevada, Arizona, Utah, and Colorado. First, defendant argues that with respect to whether the class members would have to be paid separately for non-productive time, the laws of California, Oregon, and Nevada all have differing requirements. *See* Cal. Lab. Code § 226.2 (requiring nonproductive work to be paid separately); Or. Rev. Stat. § 653.045 ("An employee paid by piece

15

1 rate must have total earnings that equal or exceed the minimum wage for the hours worked.");
2 Nev. Admin. Code § 608.115(2) ("If the employer pays the employee by piece rate, it shall pay an
3 amount at least equal to the minimum wage when the amount paid to an employee in a pay period
4 is divided by the number of hours worked by the employee during the pay period."). (Doc. No.
5 28 at 24–25.) Second, defendant points to different requirements regarding whether drivers must
6 be provided with meal breaks. *See, e.g.*, Cal. Lab. Code § 226.7; 512(a) (an employee is entitled
7 to a 30-minute, off-duty meal period for every 5-hour work period each day); Arizona (no
8 requirement for meal period); Or. Admin. R. 839-020- 0050(2) (an employee is entitled to a 30-
9 minute, off-duty, unpaid meal period for every 6-8-hour work period each day); Nev. Rev. Stat. §
10 608.019(1)–(2) (an employee is entitled to a 30-minute, off-duty, unpaid meal period for every 8-
11 hour work period each day); Utah (no requirement for meal period). (*Id.* at 26.) The undersigned
12 observes that these laws are, at least in some instances, materially different.

            ii.        Each State's Interest in Applying Its Own Law

14      Next, the court examines each state's interest in applying its own law. This analysis
15 requires an examination of "the governmental policies underlying each state's laws." *Scott v.*
16 *Ford Motor Co.*, 224 Cal. App. 4th 1492, 1504 (2014), *as modified on denial of reh'g* (Apr. 23,
17 2014).

18      Here, the court finds that defendant has failed to carry its burden. Defendant has not
19 addressed the relative interests of any state, nor is there any mention of the public policies that
20 would be advanced by applying one state's law over another. Defendant has failed to explain
21 what governmental interests are at stake and the court has no independent obligation to do so.
22 *See Senne*, 2017 WL 897338, at *34 ("Defendants must make a specific and meaningful showing
23 that the application of California law will not be appropriate under California choice of law
24 principals [*sic*] to absent class members."); *Opperman v. Path*, Inc., No. 13-CV-00453-JST, 2016
25 WL 3844326, at *10 (N.D. Cal. July 15, 2016) ("For Defendants to meet their burden of showing
26 that foreign states' interests would be impaired, it is not enough for them merely to point to
27 differences between California's law and the laws of other states."); *Werdebaugh v. Blue*
28 *Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013)

("Defendant—who bears the burden of demonstrating that foreign law, rather than California law, should apply to class claims in a California choice-of-law analysis—provides no support for its position that foreign law conflicts with California law, let alone that this conflict is so severe as to preclude applying California law to Werdebaugh's class claims.") (internal quotation marks and citation omitted). Because defendant has failed to satisfy its burden as to the second prong of the governmental interest test, the court need go no further in its analysis. *Wash. Mut. Bank*, 24 Cal. 4th 906, 920 (2001) ("[T]he trial court may properly find California law applicable without proceeding to the third step in the analysis if the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied."); *see also Forcellati*, 2014 WL 1410264, at *4 (C.D. Cal. Apr. 9, 2014) ("Accordingly, because Plaintiffs have made a sufficient initial showing for application of California law, and Defendants have failed to show otherwise, California law applies to Plaintiffs' proposed nationwide class."). The court therefore concludes that choice-of-law concerns do not defeat a finding of predominance in this case.

3. <u>Whether Individual Issues Predominate in Determining Which Individuals are Members of the Proposed Class</u>

Second, defendant argues that plaintiff has not provided an efficient means of determining whether a particular driver is a member of the proposed class. Specifically, defendant argues that "individualized manual review of each driver's trip history for every day of work during their employment is required to determine which non-resident drivers belong in Plaintiff's class." (Doc. No. 28 at 24.)

In support of its motion for class certification, plaintiff contends that "the precise number and identity of the individuals in the Class at any given time is ascertainable and can be determined from the records that Defendant maintains during its regular course of business." (Doc. No. 25 at 9.) The deposition of Kevin Quast, defendant's Chief Operations Officer, appears to confirm this. In that deposition, Mr. Quast testified that defendant maintains an electronic recordkeeping system of all routes driven by its employees. (Doc. No. 25-2 at 43:13–23.) Mr. Quast specifically confirmed that this records system would permit a user to determine

which trips started and ended entirely within California. (*Id.* at 54:1–3.) In addition, defendant also maintains records regarding when drivers perform non-driving tasks, such as pre- and post-trip inspections. (*Id.* at 37:3–8.) Finally, plaintiff has submitted evidence to the court that defendant maintains a uniform compensation policy that applies to all putative class members. (Doc. No. 25-4.)

The court finds that based on the existence of these records, a class-wide determination of liability or damages would not be so burdensome as to defeat predominance. Multiple courts have found predominance under strikingly similar facts. *See, e.g.*, *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (finding predominance satisfied because defendant's "computerized payroll and time-keeping database would enable the court to accurately calculate damages and related penalties for each claim"); *Taylor v. Fedex Freight*, Inc., No. 1:13-cv-01137-LJO-BAM, 2015 WL 2358248, at *11 (E.D. Cal. May 15, 2015) ("Courts routinely hold that proof of a defendant's uniform pay policy, similar to the mileage pay formula at issue here, is not plagued by individual inquiry, but is often sufficient to satisfy the predominance requirement."), *report and recommendation adopted*, 2015 WL 4557412 (E.D. Cal. July 27, 2015); *Ridgeway v. Wal-Mart Stores Inc.*, No. C 08-05221 SI, 2014 WL 4477662, at *8 (N.D. Cal. Sept. 10, 2014) (same); *Mendez v. R& L Carriers, Inc.*, No. C 11-2478 CW, 2012 WL 5868973, at *17 (N.D. Cal. Nov. 19, 2012) (same); *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) ("Class certification is usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established."), *aff'd*, 375 Fed. App'x 734 (9th Cir. 2010); *cf. In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) ("[C]ourts have long found that comprehensive uniform policies detailing the job duties and responsibilities of employees carry great weight for certification purposes."). Because of the system of electronic records maintained by defendant, the court finds that determining the composition of the class would be straightforward and provides no basis to deny class certification.

Accordingly, the court finds predominance to be satisfied here.

/////

**F.      Superiority**

Finally, the court addresses whether the class action is the superior vehicle for adjudicating these claims. In determining superiority, the court is to look to issues such as class members' interests in individual control of the litigation, the extent of any litigation already begun by class members, the desirability of concentrating the litigation in a particular forum, and the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D). There has been no showing here that any of the class members have a separate interest in individual control of the litigation, or that suits by class members are already pending on these same issues. Moreover, the types of claims at issue in this case likely involve smaller amounts of damages, for which the only practical means of seeking redress is class treatment. *See Zinser*, 253 F.3d at 1190 ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."). Superiority is therefore also satisfied here.

## CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for class certification (Doc. No. 25) is granted;

2. The following Class is certified pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3): **All current and former truck drivers employed by defendant Knight Transportation, Inc., who advised defendant that they resided in Oregon, Nevada, Arizona, Utah, and/or Colorado, who were paid in whole or in part on a piece-rate basis, and who drove one or more routes of five hours or more entirely within the State of California for defendant during the "Class Period" from September 30, 2012 through the date of the entry of this Order.**

3. The Court finds that the attorneys at Ackermann & Tilajef, P.C. and HammondLaw, PC are qualified and adequate counsel, and hereby appoints Ackermann & Tilajef, P.C. and HammondLaw, PC as Co-Class Counsel for the aforementioned Class;

/////

| | | |
|---|---|---|
| 1 | 4. | The Court finds that plaintiff Robert Martinez will fairly and adequately protect the interests of the Class, and hereby appoints Robert Martinez as the Class Representative; |
| 4 | 5. | The parties are ordered to meet and confer within 14 days of this order regarding dissemination of a joint proposed notice of class certification and opportunity to opt-out. In the event the parties are unable to agree on a proposed notice, the parties may each submit a proposed notice and a supporting brief, not to exceed five pages in length, to the court with within 21 days of this order; and |
| 9 | 6. | The matter is referred back to the assigned magistrate judge for further proceedings consistent with this order. |

IT IS SO ORDERED.

Dated: **November 30, 2018**　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE